Oral argument not to exceed 15 minutes for the plaintiffs and 15 minutes will be shared by the defendants. Mr. Krugman for the appellant. Good morning, your honor. May it please the court, Edward Krugman for the appellant and I've reserved 5 minutes for rebuttal. Please proceed. Thank you. The principal issue on this appeal from a denial of a preliminary injunction is whether the district court erred in applying the three-factor hunt test to the associational standing of the Washtenaw Association for Community Advocacy. We are not asserting any more organizational standing. This is simply associational standing under hunt. The secondary issue, assuming standing exists, is whether the district court should in fact have entered a preliminary injunction on behalf of WACA. The standard of review is de novo because standing is an issue of law. And the standing really begins and ends in terms of what the district court did with the first factor of the hunt test because the district court misapplied that factor. The court makes a factual finding incidental to the issue of standing. Is that reviewed de novo or isn't that reviewed for clear error? That's clear error, your honor. I don't think there are any factual findings that are specific to the issue of standing. There certainly were factual findings below and a number of those things we simply haven't brought up because of the standard of review. Well, there are a lot of questions about whether this association had more than three members. Are you satisfied with us proceeding on the basis of just looking at the three who apparently it appears as if there's no dispute that those three named plaintiffs paid dues? That's correct, your honor. Are we limiting our... For these purposes, yes. And we will have additional things to say perhaps in the district court, but right now we're up here on those three because under Barry against Lyon and under the Supreme Court case law, it just takes one. And the district court never held and it's not the case that these three don't have standing. And I think it really is that simple with respect to the first factor of the hunt test. There's no holding that the individuals don't have standing. There's no disagreement that they're members. That's the first factor. And the second and third factors are easy, I submit. The second factor is, is this germane to what the association does? Well, the association exists and there's testimony, but it's sort of obvious on its face as well. The association exists to advocate for developmentally disabled people in Washington County. That's what this case is about, developmentally disabled people in Washington County. And the third factor, redressability, does it require individual participation by the members? The answer is it does not because of the nature of the relief that is being sought. The nature of the relief is prospective injunctive relief saying the procedures that the defendants undertook with the budget cuts were inappropriate. And specifically, what WACA is asking for, for a preliminary injunction, is a preliminary injunction requiring proper re-notice so the clock can restart and people can have their appeals. And in particular- Let's go back to that because we're now in a way sort of interposing factors one and factor three. So when we look at the relief being sought, but we apply it to factor number one. And we assume that they're members because that's what Judge Tarnow found. Then we go on to whether or not they have standing to assert the relief that you're seeking. And it at least looks on the surface, so that's what we'd like you to address, that the three named members received all of the process that they were entitled to. Now, there might have been a mistake at the beginning, people might have screwed up. But eventually, they got the process. So, if we conclude that they received all the relief that you're seeking, how do they then have standing to continue this case? The posture that it's currently in. Fair enough. There are a number of strands to that question. And if I may, I'd like to unpack it a little bit because that is really, I take your point, that is really what this appeal is about. And the first part of it is, and I think there's no dispute about this, standing is measured as of the filing of the complaint. The Supreme Court held that in, I believe, Friends of the Earth against Laidlaw. And this court held that in Cleveland NAACP against Parma. So we're looking at a specific point in time, which is March 15th, 2016. As of that date, it differs a little bit among the three individual plaintiffs. Arguably, I don't think it's the case, but arguably, Plaintiff Waskell had all of the relief that he requested because. But there's no dispute that Weisner did not. There's no dispute that Weisner did not. That's correct. And that's- So you have the one. That's exactly where I am. It requires that Cleveland NAACP requires, so you have standing. We may be using different language, but it seems that standing is established. It seems to me that standing is established at the complaint. And then the question becomes, throughout the proceedings, does the claim become moot? Those are not exactly interchangeable terms. But I would use the terminology, is there mootness in this case? Fair enough. Because I assume, it seems to me that standing is established. So why is your claim not moot? The claim is not moot for several reasons. One of them is, once the association has standing, it is entitled to go out and advocate, as exactly as happened in Cleveland NAACP against Parma, where the standing was established, but by the time it got to this court, the original person who had been seeking employment as a Parma police officer was no longer interested in the case, didn't matter. The NAACP could still proceed. In other words, the subsequent moot, first of all, it's not moot. I want to come back to that. Was that a class action before you go on? The case that you're asserting was a class action, was it? I believe it, actually I don't know for sure, Your Honor. I don't believe that the standing determination- Let's not confuse the question of the adequacy of a class representative with the question of mootness. I agree with you, I agree, Your Honor, and I don't think I'm doing that. I believe, and I've looked at the Parma case several times recently. I believe that any issue as to class and mootness was distinct from the standing issue there. That's my recollection of the case. Did this one person that you and Judge Stranch believe had standing, did they then get the relief that you're seeking now for the entire membership between the time you filed the case and now? No, they did not. They got some of it. They didn't get all of it, and that's- What didn't they get? They did not get a proper notice that said, we are about to take negative advance action against you, and if you appeal, because this is a negative advance action, and this goes all the way back to Goldberg against Kelly. If you appeal, you are entitled to continuation of benefits pending the appeal. And that never happened, still hasn't happened, and under the circumstances of this case, and I invite the court to look at Addendum D to our brief, which is some subsequent events in the Wiesner case. The benefits pending point really matters here because it puts the burden of delay on the agency as opposed to on the plaintiff, and that's exactly what Goldberg against Kelly said it's supposed to do. The agency says that they recognize that the notice was deficient, and they went out and met with every single one of the 169 or whatever it is that's your potential membership, and they've all reached agreement. Some of, is that wrong? Your Honor, that is wrong. They- So who specifically then didn't get what they were entitled to? Nobody got a notice that said, we are about to cut your benefits, and if you are- If you didn't get a notice, and then you go out and you cure that, who, you're claiming the subsequent actions for the agency didn't cure the deficiency? That's correct, Your Honor, and the reason is, the reason ties back to, among other things, but it ties back to the nature of the notice. Because the notice did not say, this is a cut. They simply went out and said, we're renegotiating your IPOS. That's a- Indicating that the continuation was adequate? That, the notice that they gave after that, that's correct, Your Honor. That's the gene formula, we've got to distinguish between the notices. Everyone appears to agree that the May notice was inadequate, and now we're talking about the June notice. That's correct, and the June notice was, it's called an adequate notice, and I've actually spent some time trying to figure out the etiology of the use of that word in the dim recesses of Goldberg and Kelly lore. But, what happened was, that was a notice that they gave to people, and it's in the record, after they renegotiated the IPOS, saying if you don't like your IPOS, here's your appeal rights. It's not an advance notice of negative determination, there's no benefits pending, it's just, you can appeal if you don't like your IPOS. They, there is nothing in the record to say that they went and told people, we are cutting your benefits, you have a right to benefits pending, while, if you appeal, you have a right to benefits pending while that's determined. And as- So we know the three named parties did not have a continuation of the pre-May 2015 benefits? Waskell may have, the other two did not. Okay. Well, the three named parties all filed appeals and went before ALJ, didn't they? And, and those appeals, and as Judge Strange pointed out, the Wiesner appeal had not been resolved as of the time of the filing of the complaint. But it got resolved afterwards? Not with full relief, that's the point. The, the- Did, did Wiesner appeal then, the lack of full relief that you're saying, that he didn't get from the ALJ? It is, it is not clear that he had the ability, that he had, he had the procedural ability to do that. And the, the issue here is that the administrative proceeding is framed by the notice that is given. So the bottom line is you want to do over here for plan years, if that's the right term, that were several plans ago, even though the agency at least says they met with everybody that was entitled to proper notice. And as far as they know, everybody's satisfied. That's, is that, have I distilled this down correctly? Not entirely, your honor, although, although I, I, there, I think yes in part. The- Why, why don't you think about what the, why that isn't accurate? If I got part of it right, but part of it wrong, then you got five minutes when you come back and, but we'll find out exactly from them, why this, why they claim eventually your folks got everything they were entitled to. Fair enough, your- Before you stop, I have a question. Explain to me where the three orders are for the three individuals, Weisner, Waskell, and Schneider. Have those orders of the ALJ been fully implemented, or do they remain on appeal by the, by your, by the defendants? They remain on appeal by the defendants. There is a factual issue unresolved in the district court as to whether they have been fully implemented. We have affidavit evidence in the record that says they have not been fully implemented. Well, one of the orders, as I understand it, specifically ordered that there be a return to the pre-May 2015 calculation methodology. Has that been accomplished? Absolutely not, your honor. Okay. And, and, and the best way to see that is in addendum D to our brief, which is the November 2016 follow-on order of the ALJ that says you guys didn't do this. Good morning. If it please the court, my name is Stephanie Carter. I represent Washtenaw County Community Mental Health. My colleague and I plan to divide our time in half. I think- So that we are all on the same page. Yes. You are the direct action agency. That is correct. You're the ones who, who deal directly with the developmentally disabled and- That is correct. Thank you. I think, first of all, the, from what I heard based on the questioning previously, what I, I want to say first, I submit that all of the claims of the individual plaintiffs, which are not really before the court, are moot. They all have gotten, as a matter of fact, as of now, each of the individual plaintiffs and everyone else who receives community living supports in Washtenaw County is receiving more in benefits than they were in April of 2015. We admit that there was a mistake in April of 2015. One question. Yes. Are they receiving more benefits than they were in April of 15 because you had a 6% increase or because you returned to the calculation method that was pre-May? Both, but we didn't, we did not- You have returned, so you- No, I want to clarify that. Thank you. The individual plaintiffs, the order from the administrative law judge is that their benefits be restored and the benefits were restored. Well, no. One, the, I believe it's Weisner's specifically says, you shall return to the pre-May 2015 calculation methodology. So my question to you is, have you done that? I believe that the order that you're referring to is one that we have appealed. There's still an appeal pending. So you have not implemented the order? We have not gone back to the flawed methodology. Thank you. We have not gone back to that. And that's really- You've not complied with the ALJ's order. We have appealed the ALJ order. So if the order, and there are several orders involved. If there was a specific order, most of the orders did not say return to the calculation method because that calculation method was flawed. That calculation method is really what's at the basis of the complaint from these appellants. They want to have the base benefits, which they have received all along. There was never a reduction in the base benefits for any of- I understand. So based on the testimony of your witnesses, there's a dispute of material fact as to whether the calculation method is inappropriate under your standards because at least one ALJ has found it the appropriate methodology for determining benefits. I don't believe that on the record in the district court, there's no testimony to say that this is a flawed method. And we are a part of a regional authority. And the regional authority sets the method by which benefits are given out. This is not all of our money. My struggle is that the act itself sets the method by which benefits are to be implemented. And I understand we have a whole series of contractual arrangements from the state, through CMHS, through WCCMH, so that there are contractual relationships. But the entire case is governed by the act. And the act says for these waiver individuals who are waived out of institutionalization, both because that saves money and because it is an improved living situation for them, well, those individuals have to have a needs-based budget created. And then that can't be capped. That is the basis of how you calculate what monies go to each of the individual clients. You are exactly right. And what perhaps I'm not explaining correctly, the budget is developed through the IPOS. There's a person-centered process. The individual and their guardian and the supports coordinator, they sit down and they determine what the needs are. That's where the needs are determined, in the IPOS. And so there is no cap there. What the needs are is determined at the time of the person-centered planning process. I guess I'm struggling with the explanation because there was, in fact, a budget reduction. I'm thinking of Mr. Waskell, whose annual budget previously was $29,000 before the budgeting change, and after your budgeting change, his budget became $26,000. If you look at the, and let's focus on Mr. Waskell. So isn't that, that's an accurate description of his budget, correct? Well, if I can just for a minute explain. You're correct in one manner. But if you look at the two budgets that are attached, one is record entry 114 and one is record entry 115. His rate was $13.88 for 32 hours of service in both budgets. That is what is set in the IPOS. The number of hours that he needs to accomplish what is in his IPOS. That's where all that is worked out. I think we're, it's hard not to get down in the weeds in this, and I understand that. But what we're struggling with is whether the actual order that relates to the three named representatives has been implemented or whether there is ongoing harm, because those are the items that relate to whether a preliminary injunction is appropriately issued. And my understanding from what you said is that they have not been implemented because they're on appeal. What I'm saying is that there's been no harm. That, that's a question, that's the substantive question, isn't it? And we do not have a final decision on that. Let's try to get out of the weeds. All right. We're talking about the 2015 IPOSs, right? Yes. Have, have for all of these three named plaintiffs, have they been subsequently succeeded by 2016 and 2017 IPOSs? Yes. So we're talking about an IPS period that's, that's done. Correct. Now, what the plaintiffs say is that one or more of these three were entitled to something in 2015 they didn't get. What you're saying is, well, it's all procedural problems. We gave them bad notice, we went back, we gave them a new notice, and everything is fine. So all we're trying to figure out is, is there still a live controversy as to whether any of these three are seeking more money for whatever reason than they got for 2015? And my, and my answer to that, sir, is, is, there is, all three of them had their budgets restored to pre-2015 levels. They, they missed nothing. But did you pay the full amount of the money? Yes. Yes. You and Judge Strange are not seemingly able to get on the same page here. I apologize. She asked you a question and then you answer another question. Okay, I'm sorry. So you want to go back and say, well, they all, they had their base budget restored. But my understanding is they're claiming that they were entitled to stuff in addition to the base budget that shouldn't have been included in the base budget. Is that right? Is it right what they're claiming? That should be yes or no. Is that right what they're claiming? Yes. Yes. That's yes. Now, did they, did you then pay them all of those additional things that they were entitled to, that they're claiming they were entitled to, whether you think they were entitled to them or not? The answer to that is yes. Okay. Now, where do we find that on the record? He keeps addressing, directing us to an attachment or appendix D to a complaint, which he says, explains all those. The plaintiff's counsel admitted on the record that all three of the named plaintiffs have been fully restored. That's in the record. Where do I find that? You don't have to, if you don't have it right at hand, your time is up. So you can think about it and pass a note to her. Thank you. And fair. And when you come back to answer, I want you to help me understand how, if they've been indicate that there's a $3,000 decline in what their payments were made to them. So I want to be sure that we're talking apples to apples, and you're not just telling me they're back at 1388 because that's not what they requested. I understand. I will, I will have that for you. Thank you. Good morning. May it please the court, Marcy Stepanski on behalf of CMH, PSM, and Turbo Ledger. Do you know the answer to the question we're talking about? I believe that I do. And this is my understanding of this, that the IPOs that were established in 2015 and have been since reviewed at least twice since that time, it's a fluid document. It's a fluid process based on need. So the budget amount is the same. Whether certain activities... Is the same or is not? Is the same. Is the same. Is the same. What fluctuates are... I'm sorry. The budget amount at the $13.88 is the same. Yes. All right. Now tell us what is different. Okay. So what changes with each individual over the course of time, and that's why these are initiated by the recipient or it can be initiated by the agency, depending on what types of funding is being used, what's not being used, any change in needs. So there could be differences in activities or therapies, natural support systems, that's... But is there also not a difference in how it's calculated? And isn't that the gravamen of the issue is to whether the budget is calculated based on the $13.88, and then if you want something more, you have to lose some of the things that you have negotiated for that constitute $13.88 or pay them out of your own pocket. No. No. It's my understanding that if you are... It's all based on medical necessity. And so if you are entitled to, based upon the meeting that occurs with the person-centered process when the IPOSs are re-evaluated, if there are activities or transportation costs or therapies that are needed, then there is the ability to increase that budget, to enhance that so that they get everything that they need. And that's the point that my sister counsel was trying to make, is that they have been restored to... Where do we look to find that they got everything they were claiming? I'm not asking you to agree that their claim is valid. We're just trying to figure out, are there outstanding requests that have not been met? He says no. He says, yes, there are outstanding claims that haven't been met. And she says no. So what do you say? I say that there may be, but they may not be medically necessary. So the IPOs... But why would they not have standing, at least as to the one person, to pursue the claim as to whether they were or were not medically necessary? Seems to me you just gave away your claim on standing. No. What I'm saying is that... I think we're mixing up apples and oranges here. There are things that they are entitled to based upon their IPOS, okay? When they sit down with the recipient, with their caregivers, with the guardians, and they come to an assessment of what is needed. And I think it was 149 of the recipients came to an agreement based upon the amount that was budgeted. 20 of them appealed. And the three plaintiffs, and the three individual plaintiffs in this case were those who did appeal, were restored to pre-2015 levels. And in fact, are even budgeted at a higher level at this point. Now, the third element of standing, which is whether it requires the participation of the individual plaintiffs in the case, I think is very important here. And that's because we can't just make a blanket pronouncement in this case, like the court did in the Berry case. Because here, the IPOs are a fluid document. They change every year. They go up and down depending on needs. But there is still a consistent thread throughout everyone who has an IPOS. It's how the base level is calculated. And that's the gravamen of the fight here, isn't it? How do you calculate that? Well, and what Judge Tarnow found was that while they're entitled to adequate services and medically necessary services, they're not entitled to a certain budget calculation. And- So the question is, since you have an ALJ order that says you are entitled to it, and you have not implemented that order, then there's ongoing harm. Well, I- Yes or no? I would say no, Your Honor. And how not so? Well, the reason is because you have- What happened here is that they have the base calculation, right? And it was 1388- Okay, I think maybe we can kind of cut through that. Because the question becomes, we can't solve the substantive issue that has not been taken up by the district court. That's not been resolved yet. That's still out there. So the question becomes, you have an ALJ who says, what you are asking for, Mr. Disabled Individual, is correct. They should calculate the budget by this method. I order them to do it. Now the question becomes, have they done it? And I think the answer is, no, we've appealed it. But they haven't been harmed. That is a subjective evaluation. How do we know they haven't been harmed if they were seeking $29,000 and they got $26,000? Because the fluctuation doesn't depend on the budget. The fluctuation depends on the needs and the services and the amount of hours and whether there's natural support. There's a lot of other elements that are involved in determining that amount.  At least in the one person. And you paid $26,000, right? That's right. So why isn't that still a live dispute? I mean, it might come down to we're fighting about $3,000 here. But I suppose that's important to the individual. So why isn't that still a live dispute and not moved? Well, there's two reasons. One is because when we look at standing, and there has to be an actual case of controversy, no matter who is attempting to assert standing. And in this case, it's a procedural due process claim. And what they're claiming is that they didn't receive the process that was due to them. And a substantive claim underlying. That's true. And while they may disagree with the result, they still did receive the process that was due. So there is no case or controversy. Then what are you appealing? We're not appealing. Well, what is your co-counsel appealing if everything's been done? Oh, you mean in terms of Weisner with the... Yeah, in terms of not getting the calculation that the ALJ ordered. Right. Well, they're appealing the ALJ's understanding or misunderstanding in their perspective that the calculation was improper and essentially fraudulent. Almost like double billing. I think that's what we needed to know. Double paying. Gosh, I only have a few seconds. Are there any other questions that I could attempt to answer? Tell us what you want to tell us. Okay. Just really quickly with respect to standing. We would suggest that there's no standing through the individual plaintiffs. They've all been entitled to an appeal. They've received notice. They've either... Well, all three of these plaintiffs actually went through the appeal process and received relief. And that was really what they're entitled to. That's really what they're fighting about. They're not... It's a procedural due process claim. Would it be safe to say that if this case is viewed as limited to due process, they all got eventually the process they were entitled to? Absolutely. As to the claim for substantive relief, that is a more difficult question that we're struggling with. That's a question of entitlement. And Judge Tarnow held that there is no entitlement to a certain calculation. You're entitled to medically necessary funding, okay? And they have a process that addresses that through the Administrative Proceedings Act. Well, it does seem sort of odd that you have this Administrative Procedures Act case. They got a hearing. There's an order. That order's on appeal. Yet somehow we're being asked to jump in in the middle. But nobody seems to be even discussing that. It's almost an abstention case. That's what I thought. I kind of came into this late after briefing to argue the matter. And to me, it struck me as an abstention case. Because there are state proceedings that are still ongoing. And there's so many reasons why the court should not have granted walk of standing. And Judge Tarnow was correct in doing so. But in addition, there are these ongoing proceedings that would suggest that the District Court should abstain from getting involved at this point. Because... Nobody's asked them to do that. That's true. All right. Thank you. Thank you, Your Honor. Can I present the answer to the question? Very narrow little answer. Where do we look in the record to corroborate your statement that these people got everything they were asking for? Yes, sir. That's the transcript from the hearing. It's Record Entry 48. ID page 932. Wherein the attorney for the appellants here stated on the record that their benefits had been fully restored. They weren't calculated the same way, but the benefits were fully restored. We got it. Thank you. Okay. Thank you. Thank you. Judge McKeague, I'd like to come back to the question that you asked me at the end of my argument. It's not a do-over. It's a do-right. I spent some time working that one out. It's a do-over of your earlier answer. Well, no. In terms of the importance of the notice... How is there a denial of a substantive right if, at the end of the day, they did, in fact, get everything that you claimed they were entitled to? But they didn't. How do you respond to what she says you or somebody said in the court below? Your Honor, that point in the record, I think, is framed not in terms of everything that they... Let me see if I can get this right. The claim there, and the claim now, is that they are entitled to the benefits that they have calculated at the number of the difference... The point, I think, was that Waskell and the individuals were, at that point, getting the 29 versus 26 or the numerical equivalent. What they weren't getting, and what matters, and what still matters very much, is the right to have things calculated correctly so that, as rates go up... Judge Strancher, you pointed out that there were increases in rates, but there was not a change in the methodology. I don't think there's any dispute that they are not doing the proper add-on methodology. I don't think there's any dispute about that. What you're doing is you're changing your focus, and it may be a good idea, from whether there was $3,000 left on the table back in 2015 to the question of prospective injunctive relief as to how to keep doing this in the future. Is that what you want, or do you want both? Well, of course I want both, but what I want to do is I want to focus on Wiesner, and I In Hamby v. Neal, this court held it is extremely important to get the notice right when you're dealing with these denial-of-benefits situations because the notice frames the administrative appeal. Well, it frames the benefits that are available pending that appeal. That's correct. But is there some suggestion that any of these three didn't understand what benefits they were eligible to be seeking because of the inadequacies in the first notice that they got? Yes, actually. So you're saying that they were sort of duped when they had these subsequent hearings and meetings. Not in the subsequent hearings, but initially, yes, and what we have is Why didn't the subsequent hearings, then, cure at least the procedural due process deficiency in the first notice? That's what I don't understand. Because the procedural due process deficiency under Goldberg includes the right to benefits pending, and the benefits that they had the right pending that they had the right to were the calculation method that as rates would go up, for example, you could still add transportation. It is clear in the record from the preliminary injunction hearing that people were not able to budget for all of the things that they wanted to. Right. Another thing that sort of bothered me in trying to figure this out, there was a long period of time when transportation, to use that as your example, was included in the base rate, right? Up to 2012. Up to 2012, that's correct. Then after that, the then director said, we're going to add that on top of the base rate. And then sometime after that, somebody came along and said, no, that was a mistake. We're going to take it back away. What just seems odd here is you're saying, you're almost saying there's a constitutional right to a certain type of reimbursement that everybody admits they didn't get for up to 2012. So were they being deprived of their constitutional rights back then? Your Honor, we are not saying they were. Or are you saying once granted, you can't take it away? We are saying more the latter, but we're not saying actually either. We are not saying that there's a constitutional right to a specific budget calculation method. We are saying there is a statutory right, which is a property right under the Constitution, so it invokes the Constitution. There is a statutory right to services that are adequate in scope and duration and so forth. That's the Medicaid standard. When those things are determined, the state can't take them away. And with respect to the two- Can't ever take them away? Not without due process. You missed a few words there. They can take it away. They just have to give due process, and then you have the right to appeal if you think it was wrong. That's correct. I would like to- And hasn't that allowed to happen? And due process would have included the type of notice that would have said your benefits are being reduced, which means that they would have been able to continue to receive those benefits pending resolution of the appellate process, right? That's exactly right. And all of this is the circular, it circles around the substantive issues, because what we're really talking about is associational standing and whether the case may go forward to let the district court make that decision, which has not been made now. This is not a question of who wins on the substance. This is a question of whether there is ongoing harm so that accepted associational standing has not become moot in the course of the litigation. I mean, isn't that all that's at issue? That's exactly right, Your Honor. Only as to the three. I'm sorry. The associational standing is for the WACA. But you've admitted you don't have any standing in your own name. This is all associational standing. Associational standing. And you agreed at the very beginning the members are the three people that are in the named plaintiffs. Those are the ones that are before the court. They're not all the members, but that is the state of the record, and we are perfectly comfortable with the state of the record. So you find yourself in the same position as Cleveland NAACP? That's correct. You have an appropriate harmed individual representative that creates associational standing for all of the people that are within the association? That is correct. Okay. And Judge McKeague, if I may just go back to one thing that you said, and then I will sit down. You see, it can't be true when you have to show standing in terms of the case in controversy, and you have to show standing for the relief being sought. Because even if you can show associational standing for the relief being sought by the one named plaintiff, therefore, you can also pursue the relief being sought for all of the other people that you say are members for which there was no proof offered that you had anybody other than the three. That cannot be true. Your Honor, with respect, under Cleveland NAACP and under Supreme Court case law that it followed, it is true. So your best case for that proposition, that if you show standing with respect to the relief being sought, that you then have the right to pursue that same relief for a whole bunch of other unnamed people, what's your best case? That's exactly what happened in Cleveland NAACP. Okay. All right. Got it. Thank you. And simply on the substantive point, I'm done. We're done. Thank you. All right. Thank you. I'd like to say that we've cleared up all of the uncertainties here. The case will be submitted.